UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| KAYTLIN REED, *et al.*, | ) | Case No.: 1:17-CV-1218 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |


Currently pending before the court in the above-captioned case is Plaintiffs Kaytlin and Steven Reed's (collectively, "Plaintiffs" or the "Reeds") Motion to Lift Stay (ECF No. 14) and Defendant Navient Solutions, LLC's ("Defendant" or "Navient") Motion to Enforce Arbitration Award (ECF No. 16). For the reasons that follow, Plaintiffs' Motion to Lift Stay is denied and Defendant's Motion to Enforce Arbitration Award is granted.

## I. BACKGROUND

In August 2017, this Court approved the parties' Stipulation to Arbitrate and Stay Action. (Order, ECF No.8.) The parties stipulated to "submit all claims to binding arbitration before JAMS pursuant to the arbitration provision contained in the Promissory Note." (Stipulation, ECF No. 7.) In accordance with this Stipulation, the parties arbitrated their claim in Cleveland before a JAMS-appointed arbitrator. (*See* Mot. to Enforce at PageID #315, ECF No. 16.) To initiate the arbitration with JAMS, the Reeds paid $250—the amount the JAMS Minimum Standards of Procedural

Fairness ("JAMS Minimum Standards" or "Minimum Standards")[1] requires consumers to pay when initiating a claim against a company. (*See* Ex. M, ECF No. 14-14.) Pursuant to the JAMS Minimum Standards, Navient paid the remaining, significant, cost to conduct the initial arbitration. (*See* Def.'s Opp'n at PageID #280, ECF No. 15.) On March 15, 2019, the arbitrator issued a final award in Navient's favor in the amount of $128,676.19. (Ex. B, ECF No. 14-3.)

The Reeds subsequently elected to appeal to a JAMS appellate panel. The parties' Arbitration Agreement, contained within the Promissory Note, provides for de novo appeal to a three-arbitrator panel for claims over $50,000. (Ex. 1 at PageID #43–44, ECF No. 7-1.) The same provision also states that the appealing party must pay the cost of the appeal, subject to exceptions requiring Navient (1) to pay if required by law and (2) to "consider" and "generally honor" any good faith request from the Reeds to pay for the appeal. (*Id.*)

Despite these provisions in the Arbitration Agreement, the JAMS case manager informed the parties that the JAMS Minimum Standards would apply to the appeal, meaning the Reeds had to pay an initial filing fee of just $250, while Navient had to pay a filing fee of $1,750 plus the arbitrators' $20,000 preliminary retainer, to initiate the appeal proceedings. (Ex. D, ECF No. 14-5; Ex. H, ECF No. 14-9.) The JAMS case manager explained that Navient could seek reallocation of the fees later,

---

[1]     The JAMS Minimum Standards provide:

> With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration.

(Ex. M, ECF No. 14-14.)

but only after paying the initial fees up-front. (Ex. H, ECF No. 14-9 ("The parties are free to raise this determination with the appellate panel, however, this cannot be done, and JAMS cannot proceed with the administration of this case, until initial filing fees . . . along with the preliminary retainer, have been paid.").)

After JAMS's initial determination regarding costs, Navient refused to pay anything in relation to the Reeds' appeal. (Mot. to Lift Stay at PageID #81, ECF No. 14-1.) With the retainer and Navient's portion of the filing fee unpaid, JAMS suspended the proceedings. (*Id.*) The Reeds now seek to lift the stay, set aside the JAMS arbitrator's award, and proceed anew in federal court, while Navient seeks an order enforcing the arbitrator's award.

## II.  LEGAL STANDARD

Judicial review of an arbitrator's decision is "very narrow." *Lattimer-Stevens Co. v. United Steelworkers of America*, 913 F.2d 1166, 1169 (6th Cir. 1990). It is "one of the narrowest standards of judicial review in all of American jurisprudence." *Id.* Under the terms of § 9 of the Federal Arbitration Act ("FAA"), "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); 9 U.S.C. §§ 10, 11. While § 16 of the FAA gives parties the right to appeal decisions of a *district court*, a party can "appeal" a decision by an *arbitrator* only by asking the district court to vacate, modify, or correct an award. 9 U.S.C. § 16. Moreover, the party seeking vacatur or modification bears the burden to show relief is warranted.

Under the FAA, courts may vacate an arbitrator's decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). The FAA lists the circumstances in which a district court may vacate an arbitration award:

> (1) [W]here the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Thus, a party seeking relief "must clear a high hurdle. It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).

### III. LAW AND ANALYSIS

**A.    Reeds' Motion to Lift Stay**

The Reeds ask for an order "lift[ing] the current stay and permit[ing] [them] to pursue their claims in this [court], as the adequate alternative forum guaranteed to them by the Federal Arbitration Act." (Mot. to Lift Stay at PageID #79, ECF No. 14-1.) Throughout their Motion, the Reeds claim they were deprived of a statutorily guaranteed "independent right to appeal under 9 U.S.C. § 16(a)(3)" because Navient "refused to conform to the arbitrator's rules" and JAMS "has not compelled Defendant's cooperation." (*Id.* at PageID #82.) Relying on *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), the Reeds argue that requiring them to pay for their JAMS appeal violates the Sixth Circuit's admonishment that "if the fees and costs of the arbitral forum deter potential litigants, then that forum is clearly not an effective, or even adequate, substitute for the judicial forum." (Mot. to Lift Stay at PageID #81–82, ECF No. 14-1 (quoting *Circuit City*, 317 F.3d at 659).)

The Reeds' arguments suffer from several fatal problems. First, there is no statutorily guaranteed right to appeal an arbitrator's decision. Second, *Circuit City* is inapposite here, where the Reeds had a full and fair opportunity to pursue their claims in the initial JAMS arbitration. Finally,

the Reeds offer no argument, evidence, or authority that gives this court the ability to grant the relief they seek. The court addresses these issues in turn.

### 1.  Statutory Right to Appeal Arbitrator's Award

The Reeds incorrectly assert that they hold a *statutory* right to appeal to the JAMS appellate panel when, instead, they hold only a *contractual* right to do so. Specifically, the Reeds argue that, because Navient refused to front the costs of the appeal, the Reeds' "independent right to an appeal under 9 U.S.C. § 16(a)(3) has been violated." (Mot. to Lift Stay at PageID #82, ECF No. 14-1.) This interpretation of the FAA is plainly wrong. Appellate rights under 9 U.S.C. § 16 refer narrowly to the statutory right to appeal a federal district court's order to a federal court of appeals. Simply put, the FAA does not provide an "independent" right to appeal from a private arbitrator's award. Any power an arbitrator or appellate arbitral panel may have derives "from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Stolt-Nielsen*, 559 U.S. at 682. Thus, any appeal right the Reeds have stems solely from their contract with Navient.

### 2.  *Morrison v. Circuit City Stores, Inc.*

The Reeds also assert that Navient's refusal to pay for the JAMS appeal renders the Arbitration Agreement an unenforceable cost-shifting provision under the Sixth Circuit's decision in *Circuit City*. (*See* Mot. to Lift Stay, ECF No. 14-1.) But this argument also is misplaced. *Circuit City* addresses the situation in which high arbitration costs prevent plaintiffs from arbitrating their claims *in the first instance*. *See Circuit City*, 317 F.3d at 668–69, 676. In that scenario, the plaintiffs effectively are shut out of both the arbitral forum (due to costs) and the judicial forum (due to the arbitration agreement), leaving them with no way to vindicate their claims. Troubled by that possibility, the Sixth Circuit explained that, if "the splitting or sharing of the costs of the arbitral forum under a particular arbitration agreement effectively prevents the vindication of a plaintiff's

statutory rights, those rights cannot be subject to mandatory arbitration under that agreement." *Id.* at 658. In other words, *Circuit City* says that courts will not enforce a cost-splitting provision if it deters plaintiffs from pursuing an initial arbitration.

That is not the scenario here, because the Reeds had a full opportunity to arbitrate their claims before the JAMS arbitrator. There is no evidence to suggest that the Reeds were deterred from pursuing their claims in the initial JAMS arbitration or that the cost allocation for those proceedings was in any way improper. Rather, the parties both acknowledge that Navient paid the lion's share of costs for the initial arbitration, pursuant to the JAMS Minimum Standards. Accordingly, the rule from *Circuit City* has no bearing on this case.

The other case law the Reeds cite is similarly unpersuasive. All of the cases the Reeds cite deal with aggrieved parties that were denied access to arbitration in the first instance. The Reeds cite no case dealing with arbitral appeals, and they offer no authority to support their contention that they have been deterred from effectively pursuing their claims.

### 3. Vacatur

Most problematic for the Reeds, their arguments leave the court with no authority to set aside the initial JAMS arbitrator's award. As noted above, review of an arbitration award is exceedingly narrow. *See Lattimer-Stevens*, 913 F.2d at 1169. A district court can vacate or modify an award only in the circumstances described in 9 U.S.C. § 10(a), and none of those provisions apply in this case. The Reeds argue that they "have been prejudiced as contemplated by 9 U.S.C. § 10(a)(3)" because Navient refused to pay for the JAMS appeal. (Mot. to Lift Stay at PageID #82, ECF No. 14-1.) But § 10(a)(3) requires evidence of misconduct *by the arbitrator*, and there is no hint of such misconduct here. Nor is there any allegation or evidence to support vacatur under the other § 10(a)

provisions—nothing suggests that "the award was procured by corruption, fraud, or undue means;" that the arbitrators were biased or corrupt; or that they "exceeded their powers." 9 U.S.C. § 10(a).

In short, the Reeds do not allege that there were procedural or substantive defects in the initial arbitration, that the award itself was flawed, or that JAMS committed any error or misconduct. Accordingly, the court has no basis to jettison the arbitrator's award and allow the Reeds to start over with a clean slate. Consequently, the Reeds' Motion to Lift Stay (ECF No. 14) and proceed in federal court is denied.

### 4. Breach of Contract

It is worth noting that the Reeds do not assert a claim for breach of contract. Under Ohio law, courts "seek primarily to give effect to the intent of the parties, and [they] presume that the intent of the parties is reflected in the plain language of the contract." *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 2019-Ohio-4716, ¶ 13. Accordingly, a court can "resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987). Courts cannot "use extrinsic evidence to create an ambiguity. Rather, the ambiguity must be patent; that is, apparent on the face of the contract." *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir.1996).

Here, a plain reading of the parties' Arbitration Agreement suggests that Navient must pay for good faith arbitration appeals, or at least most of them. Paragraph G states that "the appealing party will pay the Administrator's and arbitrator's costs of the appeal." (Ex. 1 at PageID #44, ECF No. 7-1.) But paragraph E provides two key exceptions: (1) Navient "will always pay . . . if required by applicable law," and (2) Navient "will consider (and generally honor)" requests to pay that are made in good faith. (*Id.* at PageID #43.) The first exception does not help the Reeds because, as

discussed above, there is no statutory right to a private arbitral appeal. Further, the JAMS Minimum Standards clearly are not law.[2] Thus, no "applicable law" requires Navient to pay for the appeal. But assuming the Reeds made their request in good faith,[3] the second exception likely applies irrespective of the JAMS Minimum Standards. The ordinary meaning of the words "consider" and "generally" would require Navient to pay for good faith appeals unless Navient provides a sufficient justification for refusing to do so.[4] *See Cincinnati Ins. Co. v. Anders*, 789 N.E.2d 1094, 1098 (Ohio 2003) ("Common words in a contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement.").

By the terms of the Arbitration Agreement, this question of contract interpretation is for the arbitrator to decide. (*See* Ex. 1 at PageID #43, ECF No. 7-1 (agreeing to arbitrate "disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement" and disputes involving "breach of contract").) Of course, the court recognizes the possibility that JAMS might refuse to decide these questions until it receives payment, and Navient may continue to refuse

---

[2]  Nor did the parties incorporate the JAMS rules into the Arbitration Agreement by stipulating to arbitrate before JAMS. The Stipulation agreed to arbitrate in the JAMS forum "*pursuant to* the arbitration provision contained in the Promissory Note." (Stipulation, ECF No. 7 (emphasis added).) Because the parties agreed to arbitrate "pursuant to" the Arbitration Agreement, it follows that the rules and procedures laid out in the Agreement prevail in the event of any discrepancy with JAMS's rules. Moreover, paragraph C explicitly states that the arbitral administrator may not "have in place a formal or informal policy that is inconsistent with and purports to override the terms of this Arbitration Agreement." (Ex. 1 at PageID #43, ECF No. 7-1.)

[3]  The fact that the JAMS case manager ordered Navient to pay could suggest that the Reeds' appeal was not frivolous. However, the court takes no a position on the issue of good faith as neither party addresses it in their briefs.

[4]  Navient offers no explanation for its refusal to pay beyond its conclusory assertion that paragraph G controls. At no point does Navient discuss the exceptions laid out in paragraph E or argue why those exceptions are inapplicable here.

-8-

to pay its share. Absent intervention from a federal court, this infinite loop could frustrate the Reeds' attempt to enforce their contractual rights.

But the Reeds do not raise this argument. Rather than assert breach and seek a continuance of the stay until the arbitrator or this court resolves these underlying contractual issues, the Reeds ask the court to lift the stay and set aside the arbitrator's award. But absent any basis in § 10(a)(3), the court has no authority to grant the relief the Reeds want.

**B.     Motion to Enforce Arbitration Award**

The final question before the court is whether to confirm the JAMS arbitrator's award. Navient maintains that the court should confirm the award "because it was properly issued by an arbitrator that had authority, under a valid arbitration agreement." (Mot. to Enforce at PageID #317, ECF No. 16.) As discussed above, 9 U.S.C. § 9 dictates that the court "must" issue an order confirming an arbitrator's award "unless the award is vacated, modified, or corrected." Here, the Reeds refer to the part of § 10(a)(3) that permits vacatur "where the arbitrators were guilty of . . . any misbehavior by which the rights of any party have been prejudiced." (*See* Mot. to Lift Stay at PageID #81–82, ECF No. 14-1.) Yet the Reeds do not identify any instances of "misbehavior" on the part of the JAMS arbitrator. With no evidence to support their argument, and no other basis for relief, the Reeds fail to clear the "high hurdle" required for vacatur. *Stolt-Nielsen*, 559 U.S. at 671.

Accordingly, based on the narrow standard under which courts review motions to confirm arbitration awards, the court hereby grants Navient's Motion and confirms the JAMS arbitrator's award.

## IV.  CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion to Enforce Arbitration Award (ECF No. 16), and the court denies Plaintiffs' Motion to Lift Stay (ECF No. 14) and proceed in federal court.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

March 24, 2020